UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ONMYWHEY, LLC | ) | Case No.: 22-cv-00912 |
| | ) | |
| Plaintiff, | ) | District Judge: Hon. Robert M. Dow Jr. |
| | ) | |
| v. | ) | Magistrate Judge: Hon Sunil R. Harjani |
| | ) | |
| The Partnerships and Unincorporated Associations Identified on Schedule "A", | ) ) ) | |
| Defendants | ) ) ) ) | |

**MEMORANDUM IN OPPOSITION TO THE EXTENSION OF THE TEMPORARY RESTRAINING ORDER**

**I.  Introduction**

This opposition is filed on behalf of Wuhan Hengxiang E-Commerce Co., Ltd., Shenzhen Feifansheng Agricultural Trading Co., Ltd., Shenzhen Yulantian Electronic Technology Co., Ltd., Shenzhen Xiaodahuan Trading Co., Ltd., Shenzhen Xishenglun Trading Co., Ltd., Shenzhen Chengtongqin Technology Co., Ltd. ("Defendants").  On March 30, 2022, counsel for Plaintiff and Defendants participated in a hearing before this Court during which Plaintiff's counsel impressed upon this Court to extend the TRO to "maintain the status quo" through applying the case of *H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827 (7th Cir. 2012).  This Court requested briefing on two questions 1) is the law of that case correct? and 2) if correct, does that law apply in this case?

Plaintiff's brief does not address either question.  Instead, Plaintiff attempts to interject an infringement argument and places before the Court a smattering of hearsay "evidence" in an

attempt to back-fill its *ex parte* TRO. Plaintiff then assumes the *H-D Michigan* holding is correct and applies before simply arguing that this Court should extend the TRO here because courts have done so in other cases. Aside from the incorrect statements made by Plaintiff, its arguments do not provide any reason that the rational of *H-D Michigan* applies here. As Defendants will show, it does not.

## II. *H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.* Does Not Apply

As to the Court's first question, there does not appear to be any case law overturning the legal precedent set forth in *H-D Michigan* that the Court may—in certain circumstances—extend a TRO beyond 28 days. Therefore, it is assumed that the law is correct.

As to the Court's second question, the reasoning and rational supporting the decision in *H-D Michigan* establishes that its holding *does not* apply to this case. First, in this case, Plaintiff made sure that Defendants could not become aware that they were the target of a lawsuit because Plaintiff's filed all of the identities of the Defendants under seal, and then, without informing Defendants of the suit, Plaintiff secretly moved for *ex parte* TRO to ensure Defendants could not participate or defend themselves. *H-D Michigan*, on the other hand, was a trademark dispute where the defendant, DFS, received all of the papers filed with the district court but refused to accept service, and DFS—after receiving a call from the Court on the day of the TRO—expressly stated it would not participate in the hearing. *H-D Michigan*, 694 F.3d at 832. Less than a week after entry of the TRO, service was made on DFS, but it did not appear in court for over a month when it finally filed its answer. *Id*. The Court then entered a Preliminary Injunction that was directed solely to enjoining the use of the trademark at issue. *Id*. 832-833. Neither the court not the injunction made any mention at all of freezing any assets. *Id*.

When addressing whether extension of the TRO was appropriate, the Seventh Circuit held:

2

> "[F]or a TRO to be viable beyond the 28–day mark as a preliminary injunction, the order must comport with the formal requirements for a preliminary injunction. Rule 65(d) requires both a TRO and a preliminary injunction to "state the reasons why it issued," and Rule 52(a)(2) requires a statement of findings of fact and conclusions of law for decisions granting or refusing an "interlocutory injunction" (a phrase that includes preliminary injunctions). TROs issued on an emergency basis often provide only terse explanations. When a district court is considering extending a TRO beyond the 28–day limit, it would be prudent to review the explanation given to support the original order and to consider whether a further explanation may be appropriate to allow meaningful appellate review, as opposed to opening the order up to being vacated and remanded for lack of a sufficient explanation.

*Id*. at 845.

The present case is a patent infringement case. However, neither the briefing nor the TRO itself include any analysis as to 1) how the Court construed the claims of the patents at issue when entering the TRO; 2) what process and what documents were considered in construing the claims; or 3) how the Court applied that construction to the allegedly infringing products. In fact, the TRO does not address *any* allegedly infringing products at all. While the TRO cites to the Declaration of Kayvon Pourmirzaie [16] (¶17-22), that only pertains to complaints about monetary damages and Onmywhey's "goodwill and reputation," neither of which matter at all in a patent infringement case. The Complaint [1] is also silent as to any infringement analysis and fails to include any claim chart. In the entirety of the record, there does not appear to be any assessment of the scope of any claim at issue or any application of any claim to any accused product.

That is not surprising, given that the Court here does not have sufficient information before it to even make that assessment. It is well established "infringement analysis entails two steps. The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of

3

infringing." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), aff'd, 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996) (emphasis added). A design patent is "limited to what is shown in the application drawings" and therefore has "almost no scope." *In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988). "Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent." *OddzOn Prod*, 122 F.3d at 1405. "[A] design patent only protects the novel, ornamental features of the patented design." *Id*. Indeed, the scope of a design patent claim "must be limited to the ornamental aspects of the design, and does not extend to 'the broader general design concept.'" *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1333 (Fed. Cir. 2015) (quoting *OddzOn Prod*, 122 F.3d at 1405).

In construing the claims, it is the intrinsic evidence—the claims, the specification, and the prosecution history—that is "the most significant source of the legally operative meaning of disputed claim language." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). And for design patents, the Court is generally guided by the procedure set out in *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (*en banc*), which analyzes "whether the protected design represents the best design; whether alternative designs would adversely affect the utility of the specified article; whether there are any concomitant utility patents; whether the advertising touts particular features of the design as having specific utility; and whether there are any elements in the design or an overall appearance clearly not dictated by function." *Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1322 (Fed. Cir. 2016) (citing cases).

4

Here, Plaintiff did not provide the Court with the file histories of the patents at issue (all of which are extensive). Nor did Plaintiff provide the Court with the concomitant utility patents, namely US Patent Application No. 15/839328, published as 2018/0162582 (now abandoned), and US Patent Application No. 16728391 (finally rejected), both of which extol the functionality and utilitarian features of the "design" (right) including every aspect of what is purportedly encompassed by the patents at issue. Exhibit A, De Preter Declaration Exhibit 2. Plaintiff also did not give the Court any of Plaintiff's advertising that tout the functionality of the funnel top (see 110, right) the clip (116, right), and the scoop bottom (106, right). *See* De Preter Declaration Exhibit 1, A-001.



FIG. 2

The focus of *H-D Michigan* was ensuring that the TRO and any extension were support by sufficient evidentiary and legal findings. Here, the TRO does not provide the requisite "a statement of findings of fact and conclusions of law for decisions granting" the TRO, nor does it contain sufficient detail to permit Appellate review of 1) the construed scope of any claim; 2) the application of that construction to the allegedly infringing goods; 3) the ornamental features of any allegedly infringing good; or 4) how the Court determined that there was a sufficient likelihood of infringement to warrant the TRO. All that the Seventh Circuit could do on appeal from the present TRO is vacate and remanded for lack of a sufficient explanation. That is the exact situation where *H-D Michigan*, holds a TRO **cannot** be extended. *See* 694 F.3d at 832.

Accordingly, here, the holding of *H-D Michigan* does not support extending the TRO.

### III. Plaintiff's Motion Makes Unsupported and Factually Incorrect Arguments

Plaintiff makes a conclusory argument that two products allegedly infringe. But that does

5

not cure the total failure to provide this Court with the information it must necessarily consider in making a determination of claim scope and infringement. As noted, the Court does not have the file histories of the patents. It does not have the concomitant utility patents. Nor is any of that information or any infringement analysis present in the Complaint or TRO.

Plaintiff attempts to rely on hearsay "evidence" apparently received from Walmart. But there is no basis whatsoever for its contentions respecting the "Infringing Product Revenue." While Defendants admit that Plaintiff has successfully restrained excessive amounts of money, those amounts bear absolutely no relationship to the actual sales. As set forth in the sworn declarations of Defendants (Exhibits B-G), each Defendant has only sold a single unit of the accused product for *total gross sales* of less than $100 among the six of them.

In the American system, all defendants are presumed innocent until proven otherwise. That is the status quo in this Country. The status quo is not freezing a Defendant's assets under the cover of secrecy and then forcing them to try and defend themselves without access to their own money. Yet that is what Plaintiff proposes. The Court should reject that proposition.

**IV.     Plaintiff Failed to Establish that It Could Ever Be Entitled to Monetary Damages**

The entirety of Plaintiff's TRO and its arguments in support of the extension of the TRO rests on Plaintiff's assertion that it is entitled to freeze assets to ensure Defendants can satisfy a monetary judgment. That is not supported by the record.

By statute, "[i]n the event of [patentee's] failure [] to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter…." 35 U.S.C. § 287. "[T]o recover damages for patent infringement, a patentee bears the burden of **pleading** and **proving** either actual or constructive notice that the article is patented." *Maxwell v. J. Baker, Inc.,* 86 F.3d 1098, 1111 (Fed.Cir.1996) (emphasis added). Plaintiff did not do either here.

Plaintiff's Complaint does not allege that any of Plaintiff's products were ever marked with any of the patent numbers. Plaintiff does not argue in its TRO motion that it marked any product. That fails the *Maxwell* requirements on its own.

Moreover, the *ex parte* TRO ensured that Defendants stopped selling the accused product before having actual notice of the patents and has prevented Defendants from selling any of the accused product after such notice.[1] Thus, the critical question is whether Plaintiff's complied with the marking statute prior to Defendants' sales. The record is devoid of any such evidence. In fact, as shown on Exhibit 1 to the De Preter Declaration, Plaintiff's website does not reference to the patents at all, nor does it state any of Plaintiff's products are covered by any patent in suit.

Here, the extension of a TRO freezing assets that the Plaintiff cannot—by law—recover would be a miscarriage of justice and contrary to equitable considerations. As Plaintiff has not shown it could ever recover damages, even if were successful in showing infringement and avoiding invalidity of its patents, there are no circumstances in which Plaintiff will suffer any "immediate irreparable injury" by the termination of the present TRO. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

**V.      Conclusion**

The holding of *H-D Michigan* does not support extending the present TRO beyond 28 days. Plaintiff has not provided this Court with the tools required to make any determination as to the scope of the claims at issue or consider questions of infringement. Even if the Court could consider infringement, Plaintiff has not shown any circumstance where it could ever recover any damages from Defendants or suffer any "immediate irreparable injury." The extension of the TRO is both legally and factually unsupportable. It should be terminated immediately.

---

[1] That fact is confirmed by Defendants' declarations confirming each has only ever sold a single accused product.

                                              Respectfully Submitted,

                                              Aronberg Goldgehn Davis & Garmisa

Dated:  March 31, 2022               <u>/s/ Matthew De Preter</u>
                                              Matthew De Preter
                                              Aronberg Goldgehn Davis & Garmisa
                                              330 N. Wabash Ave.
                                              Suite 1700
                                              Chicago, IL 60611

                                              *Attorneys for Wuhan Hengxiang E-Commerce Co., Ltd., Shenzhen Feifansheng Agricultural Trading Co., Ltd., Shenzhen Yulantian Electronic Technology Co., Ltd., Shenzhen Xiaodahuan Trading Co., Ltd., Shenzhen Xishenglun Trading Co., Ltd., Shenzhen Chengtongqin Technology Co., Ltd.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 31, 2022 a true and correct copy of the foregoing was filed through the Court's ECF system with will provide service copies to all appearing parties.

        /s/   Matthew De Preter
*One of the attorneys for Wuhan Hengxiang E-Commerce Co., Ltd., Shenzhen Feifansheng Agricultural Trading Co., Ltd., Shenzhen Yulantian Electronic Technology Co., Ltd., Shenzhen Xiaodahuan Trading Co., Ltd., Shenzhen Xishenglun Trading Co., Ltd., Shenzhen Chengtongqin Technology Co., Ltd*